Good morning. May it please the Court, my name is Zuma Iryani and I'm an attorney for Petitioner Ala Vetisyan. I would like to reserve one minute for rebuttal and if the panel would permit, I will skip facts and go straight to the arguments. Thank you. The record in this case establishes that this Court should reverse the Board of Appeals and Immigration Judges' decision of lack of credibility because in every instance... Could you just have one minute? The time isn't moving down. And besides, it's on daylight savings. Thank you. Thank you, Your Honor. In this instance, both Immigration Judge and Board of Appeals based their decision without considering Ala Petitioner's explanation of the alleged inconsistency, without inquiring why there is an inconsistency, by speculating what the Immigration Judge considered to be reasonable or not for the Armenian police, by not considering country condition reports and other supplemental documents in their entirety, and by failing to consider the relevant parts of Ala's testimony, and also by surprising Ala during the decision that she has not produced some evidence without giving an opportunity for her to explain why this evidence was not produced. The first issue is that the Board of Appeals and Immigration Judge erred when it found lack of credibility due to the fact that Ala has not specifically mentioned in her asylum application that during one of the incidents, representatives of Armenian government attacked her and also made an attempt to rape her. There are several reasons why Immigration Judge and Board of Appeals should not have found this not credible. The mere omission of a detailed description in asylum statement should not be a support for finding a lack of credibility as this court held in Bandari v. INS. It was more than a detail, wasn't it? In her written thing, which she had a chance, by the way, to look at just before she testified, she was much, much less in detail. She was hassled, basically. By the time she testifies, it becomes a horrible situation, far beyond a hassle. Why is it the IJ can't say, look, I think you're just making it up now? Your Honor, first of all, Immigration Judge has never inquired Petitioner Ala why she has not made this change when she was making administrative changes at the beginning of the hearing. Second of all, there was an important incident where Armenian government found Petitioner to distribute flyers with anti-government information. They heard her. The only extra evidence she said that they started ripping her clothes off as if they were attempting to rape her, and then she ran away. She was able to escape. This is the only difference between her testimony and her asylum application. Which paragraph in the application are we talking about? Your Honor, this is on the second. This is on the first page of her asylum application, which is record 172, page 172, the very last paragraph of the first page. She says she was pushed down. When she gets to testify, she's being kicked. Her clothes are being torn off. They're trying to rape her, and she manages to kick them in a vital spot and run away. That's the story there. The story in the application is a lot more attenuated than that. Is it not? Actually, Your Honor, on the first of the next page, 173, she also said eventually they started threatening me with more severe punishment. Yes. Threatening somebody with severe punishment is a little different from kicking them, tearing off their clothes, et cetera, isn't it? Your Honor, this is mere detail of an important incident. This is not the incident. This is not a detail that goes to the heart of the matter. What's heart of the matter is that the government found her with anti-government information in her hands, with the flyers, and that they heard her and she was able to run away. After that, that's the state of it. Well, it's more than a detail, isn't it? Because it's the only really violent thing, or even somewhat violent thing, that happens to her in this whole story. It's the only place she's really harmed, is it not? No, Your Honor. After that... When else was she harmed? Yes, Your Honor. She was also after that harmed and she was arrested by the Armenian government. She was arrested. Where does it say they beat her up? They arrested her after there's this assassination. They strangely decided to arrest her and not her mother and take her down to headquarters. Where does it say they beat her up or anything? Well, Your Honor, she was detained and this was also a major factor that she lost her freedom at that time. Well, she was detained for 11 hours for questioning, supposedly, etc. You know, it's a little hard to see a detention alone for a few hours as being persecution. Well, Your Honor, all the factors that happen to the petitioner should in their entirety amount to the fact that she was persecuted by the government. Well, is that issue properly before us at this point? My understanding is that the I.J. found her not credible and then made an alternative holding which still didn't seem to resolve the question of whether or not if one believed everything she said it amounted to persecution. Do you think we can decide that or do you think we need to remand it? If we otherwise agreed with you. I believe, I truly believe that based on the immigration judge's decision, this is an only matter of credibility. Otherwise, there would not be a problem to find a per to find a Well, that may be, but can we find it or do we need to remand? I believe that the best scenario, of course, to be able to reverse the immigration judge's and Board of Appeals decision as this Court held in Mendoza-Paris v. INS and corroborated testimony sufficient to establish a claim for asylum and also as this Court held in Heath v. Ashcroft, if credibility is the only issue, remand may not be necessary. But how do we know credibility is the only issue? As I understand it, neither the I.J. or the BIA ever reached the question of whether assuming her entire story is true. And this is a somewhat marginal case in terms of persecution, as Judge Fernandez, assuming credibility. So how would we decide that by ourselves? I believe that if just because the immigration judge and Board of Appeals have not mentioned anything about whether this amounts to persecution, whether this is base for the asylum, just because the fact that the immigration judge has never addressed this issue should be enough to find that the immigration judge believed that if she was credible, then it would be enough to find asylum. And she spent quite a long time to explain some other reasons in the decision. If she wanted, she would mention this too, that if she was credible, it would not be enough for asylum, Your Honor. When was the last incident of persecution, the year? I believe that what happened was that in 1999, Your Honor, after October of 1999. And hasn't Armenia changed a little since then? No, Your Honor. Actually, even current country condition reports is still showing that Armenian government has not changed and still persecutes people based on their political opinion and member of social group. Where is that evidence in the record? Well, unfortunately, this case was decided a long time ago, and that is why there is no new evidence we could submit, Your Honor. There is a country conditions report in the record, and my understanding of it is that she testified specifically as to her observations regarding the conditions after the ceasefire, right? Actually, Your Honor, the immigration judge erred in this sense because the same country condition report, actually country reports for human rights policies for 2000, they stated that there were ceasefire violations by both sides in the conflict, which resulted in deaths and injuries of people, and also that Armenia was still in the same state of war with Azerbaijan as it was during the time. And she also testified from her own experience that that was true. Yes, in addition to that, Your Honor. So immigration judge has not considered fully the record that was given, that was submitted by the government.  Thank you, Your Honor. You're welcome. I will actually, Your Honor, I would like to mention very important parts regarding the petitioner's mother was not there to testify and that the immigration judge has – there is nothing on the record that says that the petitioner's mother was there to testify, and she never inquired why she was not there. Thank you very much. Thank you, Your Honor. Counsel. Good morning, Your Honors. May it please the Court. My name is Teresa Healy, and I represent the Office of Immigration. Say it a little louder, please. My name is Teresa Healy, and I represent the Office of Immigration Litigation, the respondent in this case. Actually, you represent the Department of Homeland Security, the respondent in this case.  Or Mr. Gonzalez? Yes. Yes. I represent the Department of Homeland Security. I stand corrected, Your Honor. In this Armenian asylum case, the petitioner, Ms. Abitizian, was given the chance to review her asylum application prior to her testimony. Her asylum application, including the three-page written statement, was reviewed with her by her own attorney and the court-appointed Armenian interpreter prior to her beginning. I'm having a hard time seeing where the conflict is. I mean, it appears that, or at least there is an alternative explanation, which is that her asylum application was sort of written in code because it was an embarrassing incident. Because she says things like, eventually they started threatening me with more severe punishment. And then she says, but when they saw and read the torn flyers, they left the scene as the police, leaving me unprotected and under the mercy of these thugs and others who supported them at the scene. She certainly doesn't go into any specific detail. But where's the conflict? The conflict is that the incident described in her asylum application is clearly a minor incident as compared to during her testimony. The description of the incident was a major. According to her later description, the rape never occurred either. So in both instances. It was an attempted rape. It involved the tearing of her clothes. She thought they were attempting to rape her. They were tearing her clothes and she thought they were attempting to rape her. Right. That's correct. But that's a way more serious incident than indicating that three men pushed her down, took her flyers and tore them up. Started threatening me with more severe punishment and were left unprotected and under the mercy of these thugs. There's just a minor incident versus a major incident. And she was given the chance prior to testifying to go through the written content of the application and to make a change. How can you be relaceful with such a minor incident? Because it was an incident that involved the violation of her rights, but it didn't rise to the level of having her clothes ripped and having to fight back her attackers by kicking one of them and biting him and running away. And while she was running away, she was shedding blood. So this is the question. Certainly there's nothing in here that says these other things didn't happen, nor is the language used inconsistent with it happening. So is the standard that everything that's testified to has to be in the application in detail? It shouldn't have to be in detail to the point where all details are in the application, but what she left out of the application was not a mere detail. It was a major event that went to the heart of her claim, that she was physically attacked and nearly raped, and that just was an incident that was so much more extreme than what she had written in her application. Also, she was kicked and punched, she said in her testimony. Kicked and punched, and her hair was pulled. They pushed me violently on the floor. That's not consistent with being kicked and punched. I don't know. I guess when I'm pushed, I don't feel I've been kicked and punched yet. It's happened in the past, but I've had one happen without the other. The real difference, though, is when she went on to say that her clothes were ripped, she perceived that the attacker was attempting to rape her, had the intention to rape her. And all of this happened after the police had left the scene, according to her testimony. Yet in her written statement, she indicates that the police left the scene, and following that, she was able to flee the scene. She did not indicate that her hair was pulled after that point, that her clothes were ripped, that she had to attack her attacker back before she could flee the scene. Isn't this kind of a situation exactly why we have a rule that says that if there's a perceived conflict, she has to be able to give a chance to explain it? I mean, there are certainly plausible explanations one could give for this distinction. But she was unable to explain away why she did not. Was she asked? Yes, she was asked. She was asked by the government's attorney. He asked her why this information was not included in her statement, even though she was given the chance before the hearing to change her statement. And her response to him, I believe, was that she did tell the interpreter about this incident. And then later she was asked by her own attorney why her written statement didn't include the information about the perceived attempted rape and the tearing of the clothing. And she then indicated and insisted that she did tell the preparer of her application about this, and that she had, I believe, even written this out, but that it was not then put into the written statement that was prepared for her by the application preparer. She did not indicate during the course of the hearing that her failure to include this information in her written application had anything to do with her being embarrassed or with her cultural background not allowing her to disclose an incident as humiliating as a potential sexual assault. What do you say about the conditions in the country at the time of the application and the hearing? Well, the conditions in the country don't support her story in this case. It's very clear, and that was one part of the immigration judge's reasoning for finding her not to be a credible witness. What were the conditions in the country, and what evidence is there of that? Well, the country reports clearly indicate that at that time there was a ceasefire in effect between Nargona, Karabakh, and Azerbaijan, and it had been in effect since 1994. There's really no evidence in the country conditions reports, that being the State Department reports and the reports that the petitioner submitted indicating that large numbers of Armenian young men were being forcefully conscripted into the army and being killed in large numbers. That's just not anywhere in the record. There is an indication that there were violations of the ceasefire agreement, but it did not indicate that there were violations to the extent that it undid the ceasefire. Well, it does say there were credible reports of forced conscription involving several refugees, and it later says that despite the ceasefire, people were being killed. Yes, it talked about forced conscription of refugees, and during her hearing, the petitioner did not indicate that those being forcefully conscripted were refugees, and the refugees I believe that are being referred to are the ethnic Armenians who were from Nagorno-Karabakh region who had fled their situation and were living in Armenia. But certainly there's no evidence that young men from Armenia who were natives and citizens of Armenia were being forcefully conscripted in large numbers and killed and not returning from the front lines, or that the ceasefire was a farce and was not really true. The reports simply do not reflect that. Additionally, the country condition reports and the documents submitted by the petitioner reflect that the overwhelming majority of the Armenian population in Armenia support Armenia's role in the Nagorno-Karabakh situation. Well, but that is obviously a question of political opinion. I mean, certain people in this country would represent that the overwhelming majority represent X, and other people would say the overwhelming majority represent Y. And a perception of what people believe is likely to be extremely colored by one's own political view, and people who are politically active often exaggerate the degree of support for their position. Your Honor, I believe, though, that in all of the various documents that were submitted, even by the respondent for background, indicate this support by the Armenian community for Nagorno-Karabakh. And she's opposed to it, and she perceives that there's a lot of support for her position. However, it was unrealistic. We find a lot of minority people, people with very minority positions here, who think many people agree with them. But it was in light of the background information and the fact that there is the support, it was unreasonable for her to conclude that when she would interview people, that 100 percent of the students would agree with her position, 80 percent of the people on the street would agree with her position. And also, finally, the petitioner indicates that the Armenian government is the equivalent of the mafia, and there's absolutely no evidence in the country reports that supports this at all. The petitioner attempted to supposedly submit some kind of documentation about this on the date of the hearing. However, the immigration judge rightfully did not accept this documentation because she had been warned twice previously at other administrative hearings that such evidence would have to be submitted at least two weeks in advance of the hearing. Okay, you've used your time. Thank you very much for your argument. Thank you. Thank you.
judges: Fernandez, Berzon, Panner